IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**ROBERT F. BARNARD**, as
personal representative of the estate
of Raymond Paulk, and
**ROBIN BAXLEY**, as the personal
representative of the estate of Michael
Scarberry,

    Plaintiffs,

vs.                                CASE NO. 5:10cv213/RS-CJK

**GEICO GENERAL
INSURANCE COMPANY**,

    Defendant.
_____/

## ORDER

Before me is Defendant's motion for summary judgment (Doc. 45).

### I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the

1

court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiffs. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff did not directly respond to the majority of Defendant's statement of facts (Doc. 46), therefore those facts as stated by Defendant are deemed admitted.[1] However, it is clear from Plaintiff's responses that the material facts of the case are largely undisputed.

This is a consolidated third party insurance bad faith action brought by Plaintiff Robin Baxley, as the personal representative of the estate of Michael Scarberry, and Plaintiff Robert Barnard, as the personal representative of the estate of Raymond Paulk. The case arises out of a single-car accident caused by the negligent driving of Layura Sellers in which Michael Scarberry was killed. Sellers was driving a car owned by her father, Raymond Paulk. Paulk and his wife, Winnie, were insured under one policy by Defendant Geico.

The accident occurred on January 7, 2005. Winnie Paulk reported the accident to Defendant on January 8, 2005, and Defendant began its investigation of the accident that same day. Defendant contacted Mrs. Paulk on January 12, 2005, to advise her that Defendant would attempt to tender the full $10,000 policy limits to Scarberry's mother, Robin Baxley. Later that same day, Defendant confirmed that Attorney Hosam Zawahry was representing Baxley, although Geico had not received a letter of representation from Zawahry. On January 19, 2005, eleven

---

[1] Pursuant to N.D. Fla. Loc. R. 56.1 "all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party." Great deference is given to a district court's interpretation of its local rules, and will only be reviewed for an abuse of discretion. *Mann v. Taser Intern. Inc*, 588 F. 3d 1291, 1302 (11th Cir. 2009).

days after the accident, Defendant tendered by hand-delivery to Zawahry's office a $10,000 check for the full bodily injury ("BI") policy limits, made out to the personal representative of the deceased Scarberry's estate and Zawahry. Releases accompanied these checks, releasing Winnie Paulk, Layura Sellers, and Geico from liability. Raymond Paulk's name was not included in these releases. In a letter dated February 13, 2005, Defendant advised both Paulks of their policy limits, of the possibility that claims arising out of the accident could result in a judgment in excess of their policy limits for which they would be personally liable, and of their right to retain their own attorney to protect their interests. (Doc. 46-8).

Geico attempted to contact Zawahry sixteen times in the months after its tender of the policy limits on January 19th but received no response from Zawahry. On July 28, 2005, a representative of Defendant hand delivered a release and a second check for the full BI policy limits to Zawahry's office because the check issued in January had expired.

Zawahry communicated with Geico for the first time in a written correspondence dated August 5, 2005. (Doc. 46-19). In this letter, Zawahry indicated that he received the check and release from Defendant, and that he believed an estate would have to be established before it could be executed. Zawahry requested that Defendant consider waiving the opening of an estate and having Baxley execute the release personally. In the alternative, Zawahry

requested that Defendant pay for the cost of filing the estate in addition to the settlement, which Zawahry estimated would take ten hours at the cost of $250 per hour, plus the cost of filing fees. Zawahry also requested disclosures under the insurance disclosure statute, that the check be reissued to "Robin Baxley and Sam Zawahry, her attorney," and suggested additional language in the release regarding civil or criminal restitution related to a potential criminal case against Sellers. Zawahry stated that he would like to have the re-issued check and documents within thirty days, and if Defendant did so his clients would sign a general release of her claims releasing Geico and Sellers.

In what was no doubt a response to Zawahry's extremely high estimate of the costs of setting up a simple estate, Defendant contacted attorney Angela Jones about setting up an estate for Scarberry. Jones attempted to contact Zawahry over several weeks, but did not receive a response from Zawahry until after he filed suit. In a letter dated August 31, 2005, but received by Zawahry on September 8, 2005, Defendant responded to Zawahry's August 5th letter. (Doc. 46-24). Zawahry responded on September 19, 2005, stating that Geico had failed to comply with the requirements in the settlement offer. (Doc. 46-25). On September 21, 2005, Winnie Paulk advised Geico that she had received a complaint filed by Baxley in state court. That complaint resulted in an entry of a consent judgment in favor of Baxley in the amount of $2,500,000.00. (Doc. 46-28).

5

On September 18, 2009, Baxley filed a third party bad faith action against Geico in state court. On October 14, 2009, Geico removed the case to this court. *See* 5:09cv343, Doc. 1. On August 20, 2010, Barnard, as the personal representative of Raymond Paulk, filed a bad faith action against Geico (Doc. 1). On October 22, 2010, Baxley's case was consolidated with Barnard's. *See* 5:09cv343, Doc. 103. Defendant now moves for summary judgment on all claims against it.

### III. ANALYSIS

When an insurer is handling claims against its insured, it "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Perera v. United States Fid. & Guar. Co*., 35 So. 3d 893, 898 (Fla. 2010) (citations and quotations omitted).

> This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785(Fla. 1980) (citations omitted). A breach of this duty may give rise to a cause of action for bad faith against the insurer. *Perera* at 898.

In Florida, the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the "totality of the circumstances" standard. *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 680 (Fla. 2004). While the issue of whether an insurer acted in bad faith is ordinarily a question for the jury, many courts have concluded as a matter of law that an insurance company did not act in bad faith. *See Davidson v. Government Employees Ins. Co.*, 2010 WL 4342084 (M.D. Fla. 2010)(citing *Maldonado v. First Liberty Ins. Co.,* 342 F. App'x 485, 488 (11th Cir. 2009), *Shin Crest PTE, LTD. v. AIU Ins. Co.*, 368 F. App'x 14, 16 (11th Cir. 2010), *RLI Ins. Co. v. Scottsdale Ins. Co.,* 691 So.2d 1095, 1096 (Fla. 4th DCA 1997)).

In the instant case, it is undisputed that Defendant tendered the full policy limits to Baxley's attorney, Zawahry, eleven days after the accident occurred. Defendant subsequently attempted to contact Zawahry sixteen times over the next six months, with no response from Zawahry. Defendant also delivered a second check for the policy limits when the first check expired after six months without being cashed. It is clear that Defendant made every attempt to settle the claim for the policy limits, despite Zawahry's inexplicable evasive behavior. For an attorney to refuse to respond to attempts to contact him for months at a time is outrageous and unprofessional. As noted in the comment to Florida Rule of Professional Conduct 4-3.2, "[d]ilatory practices bring the administration of justice into

disrepute," and "[r]ealizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client."[2]  Thus, Plaintiff cannot now use her own attorney's poor behavior to claim bad faith on the part of Defendant.

In addition to immediately tendering the policy limits and attempting to settle the claim, Defendant actively kept its insured notified of what was happening with the claim.  It advised the Paulks just days after the accident that it would tender the full policy limits to Baxley and attempt to settle the claim.  Defendant also advised both Paulks of their policy limits, of the possibility that claims arising out of the accident could result in a judgment in excess of their policy limits for which they would be personally liable, and of their right to retain their own attorney to protect their interests..

"The essence of an insurance bad faith claim is that the insured acted in its own best interests, failed to properly and promptly defend the claim, and thereby exposed the insured to an excess judgment." *Boateng v. Geico General Ins. Co.*, 2010 WL 4822601, (S.D. Fla. 2010)(citations omitted).  Here, the undisputed facts of this case demonstrate no basis upon which a reasonable jury could conclude that Geico acted solely in its own interest in attempting to settle the claim.  Instead, the

---

[2] Indeed, Zawahry's behavior in refusing to respond to Geico's sixteen attempts to contact him appears dangerously close to the type of bad faith claim "set-up" warned of in a recent Florida Bar Journal article.  *See* Gwynne A. Young and Johanna W. Clark, *The Good Faith, Bad Faith, and Ugly Set-up of Insurance Claims Settlement*, 85 Fla. Bar. J. 9 (Feb. 2011).

facts demonstrate that Geico acted promptly, diligently and with due concern for the Paulks' interest.

Plaintiff makes much of the fact that the initial releases delivered in January were only in favor of Winnie Paulk and Layura Sellers, not Raymond Paulk. However, given that Winnie Paulk and Raymond Paulk were joint policy holders, this was clearly merely an oversight on the part of Defendant amounting to negligent behavior, not bad faith. Although negligent conduct is relevant to an insurer's good faith, negligent conduct (without more) falls short of "bad faith." *Cardenas v. Geico Cas. Co.*, 2011 WL 111588 (M.D. Fla. 2011)(citing *DeLaune v. Liberty Mut. Ins. Co.,* 314 So.2d 601, 602-03 (Fla. 4th DCA 1975)).

Because there is no evidence from which a reasonable jury could conclude that Defendant acted in bad faith towards its insured, summary judgment is granted for Defendant.

## IV. CONCLUSION

**IT IS ORDERED:**

1. Summary judgment is granted for Defendant against both Plaintiffs.
2. The Clerk is directed to close the file.
3. The Clerk is directed to post a copy of this order in case 5:09cv343/RS-CJK and close that file as well.

9

**ORDERED** on May 25, 2011.

                                          **/s/ Richard Smoak**
                                          **RICHARD SMOAK**
                                          **UNITED STATES DISTRICT JUDGE**